**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | |
| Daniel Ryan Luken and ) | |
| Shaunda Rose Luken, ) | Case No.: 09-12359-ABB-7 |
| ) | |
| Debtors. ) | |
| -------------------- | |
| Daniel Ryan Luken and ) | |
| Shaunda Rose Luken, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | A. P. No.: 11-00122-BGC |
| ) | |
| Deutsche Bank National Trust Company, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The matters before the Court are: 1) Deutsche Bank National Trust Company's Motion to Dismiss Adversary Complaint filed on August 30, 2011, Docket No. 9; and 2) a Memorandum of Law in Support of Deutsche Bank National Trust Company's Motion to Dismiss Adversary Complaint filed on August 30, 2011, Docket No. 10.[1]  After notice, a hearing was held on April 12, 2012.  Appearing were: Roman Hammis for the Plaintiffs; and Paul Ratori and Esther McKean for the Defendant.  The matter was submitted on the arguments of counsel and the pleadings.

**I. Background**

The Plaintiff-Debtors complain that when the defendant Deutsche Bank did not follow through on a planned foreclosure of their property, they suffered damages. As described in the pending complaint, A.P. Docket No. 1, the underlying facts do not appear to be in dispute, and for purposes of the pending motion, are sufficient.

The Defendant instituted foreclosure against the Debtors on December 3, 2008, and obtained a judgment of foreclosure on June 10, 2009. The Debtors filed the pending Chapter 7 case on August 24, 2009. Case Docket No. 1.

---

[1] This adversary proceeding was reassigned on December 9, 2011, to The Honorable Benjamin Cohen, United States Bankruptcy Judge in the Northern District of Alabama, Southern Division.  A.P. Docket No. 13.

The Defendant filed a motion for relief from the stay on September 14, 2009, seeking permission to pursue its mortgage rights. Case Docket No. 13. Shortly thereafter, the Debtors stated their intention to surrender the property subject to the Defendant's mortgage, Case Docket No. 14, and on October 15, 2009, this Court granted the Defendant's request for relief from stay. Case Docket No. 20. The Defendant did not pursue its right to foreclose its mortgage until after the pending complaint was filed, that is several years after its initial foreclosure proceeding.

The Debtors received their discharges on December 17, 2009. Case Docket No. 23. In their complaint, the debtors contend that: (1) the defendant's delay, "eliminated Debtors' right (a) to surrender the real property under 11 U.S.C. § 521(a)(2) and (b) to a 'fresh start'"; and (2) the defendant's delay, "violated the Discharge Order and the provisions of 11 U.S.C. § 524." Complaint at 4, A.P. Docket No. 1. In addition, the debtors contend that because of the delay they suffered damages relating to the maintenance and ownership of the property. Specifically they contend they were assessed with fines and homeowners' association fees that arose because of the defendant's delay.

The defendant contends that the adversary proceeding should be dismissed for failure to state a claim. Generally, the defendant argues that there is no legal support for the debtors' contentions. Specifically, the defendant argues that there is no legal support for the propositions that: (1) the debtors' surrender required it to foreclose on the property; and (2) its failure to foreclose was a violation of the discharge injunction.

## II. Issues

The issues in the context of the motion to dismiss are: (1) Is there legal support for the debtors' contention that their surrender required the defendant to foreclose; and (2) Is there legal support for the debtors' contention that the defendant's failure to foreclose violated section 524?

As discussed below, the Court finds that there is consensus among many courts that there is no legal support for the proposition that a debtor's surrender requires the associated creditor to take a particular action; however, there is legal support for the theory that inaction by a creditor may be a violation of the discharge injunction.

## III. Applicable Law

### A. Motions to Dismiss

Quoting the Supreme Court's opinion in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Eleventh Circuit stated in Nettles v. City of Leesburg Police Dep't, 415 Fed.Appx. 116, 122 (11th Cir.2010):

2

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the .... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). **While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations**, ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), **a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not** do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004)[ ] ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] **a legally cognizable right of action**"), on [the assumption that all the] allegations in the complaint are true (even if doubtful in fact) ...
>
> Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (footnote omitted).

Id. at 120 (emphasis added).[2]

In the context of a motion to dismiss, the Eleventh Circuit has held that a complaint may be dismissed for failure to state a sufficient legal basis for a cause of action. See Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1357 (11th Cir.2006) and Sprauer v. Town of Jupiter, 331 Fed.Appx. 650, 652-53 (11th Cir.2009).[3]

The Court has applied those standards in this matter.

### B.  Surrender and Passive-Coercive Behavior

The debtors' theories are these: First, if a debtor surrenders property, the creditor must take it; Second, where a creditor does nothing for long enough, the problems that such a delay can cause may coerce a debtor into paying a discharged debt.

---

[2] Cited in conformity with Eleventh Circuit Rules 36-2 and 36-3.

[3] Cited in conformity with Eleventh Circuit Rules 36-2 and 36-3.

The parties discuss the cases which many courts recognize as the applicable law in these areas. Those cases address the above-two issues and are considered below.

### 1. Pratt and Related Cases

Current case law begins with Pratt v. General Motors Acceptance Corp. (In re Pratt), 324 B.R. 1 (Bankr. D.Me. 2005), affirmed by Pratt v. General Motors Acceptance Corp., Case No. CIV 05119PC, 2005 WL 1961341 (D.Me. Aug 15, 2005), reversed by Pratt v. General Motors Acceptance Corp., 462 F.3d 14 (1st Cir. 2006). The facts in Pratt (and the other cases discussed below) are relatively similar to the instant ones. The debtor wanted to surrender property to the lien holder. The lien holder, for whatever reason, did not timely respond. Consequently the property was effectively in limbo.

In the bankruptcy court version of Pratt, Judge James Haines framed the issue. He wrote:

> The twist is that the Pratts complain not about any GMAC threat to repossess their Cavalier, but about its refusal to do so, coupled with its refusal to remove its lien from the Cavalier's title. They claim that GMAC's posture stymied their fresh start, effectively operating to pressure them to pay what was owed against the car as a personal liability, notwithstanding their bankruptcy discharge.

Id. at 6-7.

After a detailed analysis of the facts and the law, on the discharge injunction issue Judge Haines concluded:

> GMAC did not violate the discharge injunction by standing on its lien rights, because those rights do not impinge on the Pratts' personal discharge. Its refusal to clear the title without payment enforced its in rem rights only. If GMAC were to tender the Pratts a reaffirmation agreement, it could permissibly seek their consent to pay both the secured and unsecured portions of its claim. It did not take even that small step. It merely responded to inquiries by stating it would release its lien upon payment of what was owed it. GMAC did not accommodate the Pratts, but it did not violate the discharge injunction.

Id. at 8-9.

The debtors appealed. The United States District Court for the District of Maine, affirmed Judge Haines. Pratt v. General Motors Acceptance Corp., Case No. CIV 05119PC, 2005 WL 1961341 (D.Me. Aug 15, 2005). The debtors appealed again.

In <u>Pratt v. General Motors Acceptance Corp.</u>, 462 F.3d 14 (1st Cir.2006), the Court of Appeals for the First Circuit reversed and remanded the matter to the bankruptcy court to determine damages. Similar to the posture of the instant case, the circuit court considered two issues.

As to the first issue, Senior Circuit Judge Conrad Keefe Cyr wrote:

> nothing in subsection 521(a)(2) remotely suggests that the secured creditor is required to accept possession of the vehicle at the end of the 30-day period, as such a reading would be at odds with well-established law that a creditor's decision whether to foreclose on and/or repossess collateral is purely voluntary and discretionary. Thus, we agree with the GMAC contention that the Pratts' surrender did not require that it repossess the vehicle if GMAC deemed such repossession cost ineffective.

<u>Id</u>. at 19.

As to the second issue, he wrote:

> The more difficult question is whether the "surrender" provision required that GMAC release its lien. In assessing violations of the automatic stay and the discharge injunction, the core issue is whether the creditor acted in such a way as to "coerce" or "harass" the debtor improperly. See <u>In re Diamond</u>, 346 F.3d 224, 227 (1st Cir.2003); <u>Jamo</u>, 283 F.3d at 399. Although the fact that the Pratts (and not GMAC) initiated all the inquiries about releasing the lien might preclude a finding that GMAC "harassed" the Pratts, that does not foreclose the possibility that GMAC's refusal was objectively and improperly "coercive" in the circumstances. However, the line between forceful negotiation and improper coercion is not always easy to delineate, and **each case must therefore be assessed in the context of its particular facts**. See <u>id</u>.

<u>Id</u>. 19 (emphasis added).

After its own analysis of the facts and the law, the circuit court concluded:

> Although the bankruptcy court aptly noted that this precise situation is likely to arise infrequently (if ever) in future cases, the "coerciveness" involved in each case **must be assessed on its particular facts**. We can only conclude that the GMAC refusal to release its valueless lien so that the vehicle could be junked-though presumably not made in bad faith-was "coercive" in its effect, and thus willfully violated the discharge injunction. The Pratts are therefore entitled to establish and recover their compensatory damages, together with other appropriate relief under Bankruptcy Code § 105(a).

Id. at 20 (emphasis added).

Pratt spawned several cases. The most direct are Canning v. Beneficial Maine, Inc., et al. (In re Canning), 442 B.R. 165 (Bankr. D.Me. 2011), another decision by Judge Haines, and Canning v. Beneficial Maine, Inc., et al. (In re Canning), 462 B.R. 258 (1st Cir. BAP 2011) the appellate review of that decision.

The pertinent facts and issue in Canning were the same as in Pratt with the exception that the collateral in Canning (like the collateral here) was real estate, not personal property.

After another detailed analysis of the law, Judge Haines explained in Canning:

> Of course, HSBC's chosen course of action, or inaction, did not make things easy for the Cannings. Forces remained at work that could make their continued ownership of the real estate uncomfortable – forces like accruing real estate taxes and the desirability of maintaining liability insurance for the premises. But those forces are incidents of ownership. Though the Code provides debtors with a surrender option, it does not force creditors to assume ownership or take possession of collateral. And although the Code provides a discharge of personal liability for debt, it does not discharge the ongoing burdens of owning property. Cf. Foster v. Double Ranch Assn. (In re Foster), 435 B.R. 650, 653 (9th Cir. BAP 2010) (Post-petition condominium homeowners' association fees accrue as an incident of debtor's continuing ownership and are not dischargeable in Chapter 13).

Id. at 172.

Judge Haines concluded:

> HSBC violated the discharge injunction when it demanded payment from the Cannings and insisted their obligation to pay was unaffected by their bankruptcy discharge. It did not, however, violate the discharge injunction by failing to foreclose upon or release its mortgage on valuable real estate at the Cannings' post-discharge insistence.

Id. The debtors appealed.

Like the court in Pratt, the Bankruptcy Appellate Panel hearing the Canning appeal addressed the two issues before this Court. Writing for the Panel on the first issue, Bankruptcy Judge Brian K. Tester explained:

> It follows from Pratt that after the Cannings surrendered the Property, Beneficial was not required to take possession. Thus, the bankruptcy

court correctly concluded that Beneficial did not violate the discharge injunction when it refused to foreclose. The surviving and, according to Pratt, "more difficult question," is whether Beneficial improperly failed to discharge its mortgage. In re Pratt, 462 F.3d at 19.

Canning v. Beneficial Maine, Inc., et al. (In re Canning), 462 B.R. 258, 266 (1st Cir. BAP 2011) (footnote omitted).

In regard to the second issue, again, like Judge Haines in Canning and the circuit court in Pratt, the appellate panel recognized that the final answer lies in the facts. Judge Tester explained:

> Moreover and as outlined above, a comparison of the limited facts in the record with those which the First Circuit found material does not assist the Cannings on appeal; **they simply did not adduce sufficient facts at the trial level to put this case four-square with Pratt**. Unlike Pratt, the record reflects that the Property had significant value, that Beneficial did not suggest it would discharge the mortgage only upon the full payment of the loan, and that the Cannings were not incurring any attendant costs. Based upon the facts presented to and considered by the bankruptcy court, we cannot conclude that there was a particular confluence of circumstances that renders Beneficial's refusal to discharge its mortgage tantamount to coercing the payment of a discharged prepetition debt.

Id. at 268.

Footnote 12 preceding that passage reads, "We again note that the First Circuit relied upon a list of facts, not factors, and explained that the analysis must depend upon the context of the particular facts." Id. at n.12, 268.

### 2. Additional Cases Cited in the Instant Proceeding

Two cases of note in the material before the Court address the "surrender issue." They are In re Cormier, 434 B.R. 222 (Bankr. D.Mass. 2010) and In re Ogunfiditimi, Adv. Pro. 11-0282PM, 2011 WL 2652371 (Bankr. D.Md. Jul 06, 2011). Both recognized the lack of authority of a court to compel a creditor to exercise its rights against property surrendered by a debtor.[4]

---

[4] The court in Cormier did cite and discuss several cases that offered opposing support but suggested that, "the split between these cases lies more in semantics than outcomes." Id. at 231.

7

### 3. Middle District of Florida Cases of Interest

Two other cases of note are from the Middle District of Florida. These cases illustrate the split of authority in the "section 524" issue. They are In re Riddering, Case No. 9-05101, 2010 WL 3658893 (Bankr. M.D. Fla. May 20, 2010) and Ibuos v. Equity One and National Captial Management, LLC (In re Ibuos), Case No. 3:09-cv-1132-J-12, 2010 WL 1759551 (M.D. Fla. Apr 29, 2010).

Relying on Pratt, in In re Riddering, Judge Arthur Briskman wrote:

> This matter came before the Court on the Debtor's Motion for Sanctions against American General Finance, Inc. for violating the discharge injunction pursuant to 11 U.S.C. § 524(a)(2). (Doc. No. 26). The Debtor filed his petition on April 14, 2009, which included his intention to surrender a 1993 Volvo 850 that was subject to American General Finance's lien. The vehicle later became inoperable. American General Finance admits that even after it received communication from Debtor's counsel, it has not repossessed the vehicle or cancelled the lien. (Doc. No. 31).
>
> A creditor violates the discharge injunction under 11 U.S.C. § 524(a)(2) (2006) **when its behavior** "coerces" or "harasses" the debtor into paying a discharged debt. In re Pratt, 462 F.3d 14, 19 (1st Cir.2006). A creditor "coerces" or "harasses" a debtor when it fails to either repossess or cancel the lien on an inoperable vehicle, essentially leaving the debtor with no option to get rid of the vehicle without repaying the debt. Id. American General Financial's actions are inconsistent with the discharge injunction under 11 U.S.C. § 524(a)(2).

Id. at *1 (emphasis added).

In Ibuos v. Equity One. and National Captial Management, LLC (In re Ibuos), Case No. 3:09-cv-1132-J-12, 2010 WL 1759551 (M.D. Fla. Apr 29, 2010), the district court reviewed Bankruptcy Judge Jerry Funk's ruling in favor of a creditor who did not release a lien until about 15 months after the debtors' discharge was entered.[5] Citing

---

[5] At the bankruptcy level in Ibuos v. Equity One. and National Captial Management, LLC (In re Ibuos), Adv. Pro. No. 3:07-ap-00264-JAF, 2009 WL 6430982 (Bankr. M.D. Fla. Sep 30, 2009) Judge Funk wrote:

Debtors argue National Capital's failure to terminate its security interest immediately upon entry of the Discharge Order violated Bankruptcy Code Section 524(a)(2), which "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor ..." Debtors do

<u>Pratt</u>, but not relying on it, District Judge Howell W. Melton affirmed the bankruptcy court and wrote:

> With regard to National Capital's failure to release its lien until approximately 15 months after the Debtors' discharge and after the Debtors initiated their adversary proceeding, the Bankruptcy Court noted that the "mere act of refusing to release a lien, even if invalid, does not violate the discharge injunction absent an attempt to enforce the lien, a violation of a court order, or an intent to collect the debt," none of which Debtors had offered evidence to support. Doc. 1-3 at pp. 6-7. <u>Bankruptcy discharge provisions do not require creditors to release their liens within any specified amount of time, but do prohibit them from affirmatively seeking to collect those debts after discharge. Similarly the Bankruptcy Court's discharge order does not direct creditors to release their liens.</u> There is no indication in the record that National Capital ever attempted to enforce its lien after discharge, or that it refused to release its lien after request by Debtors, but shows that it agreed to release its lien after being notified that Debtors sought its release by virtue of the filing of the adversary proceeding and in fact did release the lien. Cf., e.g., <u>In re: Pratt</u>,

---

not claim National Capital took any affirmative steps towards enforcing its security interest or collecting any debt. Debtors also do not claim that, upon being requested by Debtors to release its lien, National Capital refused to do so. Debtors simply claim National Capital failed to terminate its security interest immediately upon entry of the Discharge Order.

Bankruptcy courts have held that Section 524 "require[s] some affirmative collection efforts on the part of the creditor in order [to violate the] discharge injunction." <u>In re Dendy</u>, 396 B.R. 171, 179 (Bankr.D.S.C.2008). "The mere act of refusing to release a lien, even if invalid, does not violate the discharge injunction absent an attempt to enforce the lien, a violation of a court order, or an intent to collect the debt." <u>In re Casarotto</u>, 407 B.R. 369, 377 (Bankr.W.D.Mo.2009) (citing <u>Dendy</u>, 396 B.R. at 183).

There may be cases in which a deliberate act of omission may constitute a violation of the stay when a creditor fails to cure a previous violation or otherwise restore the status quo (<u>In re Banks</u>, 253 B.R. 25 (Bankr. E.D. Mich. 2000)), but such cases typically involve a creditor's obligation to take whatever action necessary to stop or reverse ongoing litigation or collection efforts. Count II involves neither the automatic stay nor ongoing litigation or collection efforts. Put plainly, "[t]he failure to release a lien is simply not within the proscription of § 524(a)(2)." <u>In re Weichmann</u>, 2001 WL 1836189, *3 (Bankr. N.D.Ill. 2001). Consequently, the Court will not impose liability on National Capital for the alleged discharge violation.

<u>Id</u>. at *3-*4.

462 F.3d 14, 20 (1st Cir.2006) (creditor's refusal to release lien after debtors' request unless debtors paid loan balance in full was a discharge violation); In re: Russell, 378 B.R. 735, 741 (Bankr.E.D.N.Y.2007) (debtor's allegation that creditor's deliberate refusal to correct information after repeated requests was for the purpose of coercing payment of a discharged debt was sufficient to survive a motion to dismiss charge of violating the automatic stay). **On the undisputed facts in the record**, the Court cannot find that the Bankruptcy Court erred as a matter of law in concluding that National Capital did not violate the discharge injunction.

Id. at *2 (emphasis added)(footnote omitted).

### IV.  Application of the Law

#### A.  Issue One

Is there legal support for the debtors' contention that their surrender required the defendant to foreclose?  The above cases demonstrate that there is consensus that there is no legal authority that would require a creditor to take property surrendered by a debtor. While courts recognize the practical problems such a situation can cause both the debtor and the creditor, the cases this Court has reviewed also recognize those parties must resolve their differences without court intervention.

As such, and based on Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Nettles v. City of Leesburg Police Dep't, 415 Fed.Appx. 116, 122 (11th Cir.2010), as to any claim in the complaint based on "surrender," the Court finds that the Deutsche Bank National Trust Company's Motion to Dismiss Adversary Complaint, Adv. Pro. Docket No. 9, is due to be granted.

#### B. Issue Two

Is there legal support for the debtors' contention that the defendant's failure to foreclose violated section 524? In contrast, the above cases demonstrate that there is legal support for the debtors' section 524 contention. Those cases emphasize this is a fact-driven issue, and only after consideration of the facts of each instance can a court decide whether there has been coercion that violates the discharge injunction provision of section 524.

As such, and based on Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Nettles v. City of Leesburg Police Dep't, 415 Fed.Appx. 116, 122 (11th Cir.2010), as to any claim in the complaint based on "surrender," the Court finds that the Deutsche Bank National Trust Company's Motion to Dismiss Adversary Complaint, Adv. Pro. Docket No. 9, is due to be denied.

A separate order will be entered in conformity with this opinion.

Dated: June 25, 2012        /s/Benjamin Cohen
                            BENJAMIN COHEN
                            United States Bankruptcy Judge

BC:pb